Not for Publication

## United States District Court
## for the District of New Jersey

| | |
|---|---|
| ERIC ABRAMSON,<br><br>                              *Plaintiff*,<br><br>        v.<br><br>BANK OF NEW YORK MELLON, formerly known as The Bank of New York, as Trustee for the Certificateholders CWalt, Inc.; ALTERNATE LOAN TRUST 2006-34 MORTGAGE PASS-THROUGH CERTIFICATES; RESIDENTIAL CREDIT SOLUTIONS, INC.; BANK OF AMERICA, N.A.; and JOHN DOES I-X,<br><br>                              *Defendants*. | Civil No: 15-5666 (KSH) (CLW)<br><br><br><br>__OPINION__ |

__Katharine S. Hayden, U.S.D.J.__

### I.        INTRODUCTION

Defendant Bank of America, N.A. ("BANA") moves (D.E. 14) pursuant to *Federal Rule of Civil Procedure* 12(b)(6) to dismiss plaintiff Eric Abramson's complaint (D.E. 1 ("Compl.")), which alleges violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et. seq.* ("RESPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.*

### II.        FACTUAL AND PROCEDURAL BACKGROUND

On June 8, 2006, Abramson entered into a mortgage loan contract with Southern Star Mortgage Corporation ("Southern Star") by which Southern Star loaned him $528,000, secured by a mortgage on his real property at 421 Diablo Court, Mahwah, New Jersey.  (Compl. ¶¶ 7-9.) In February 2013, the mortgage loan was deemed in default, at which point it was assigned to the Bank of New York Mellon ("BNY").  (Compl. ¶¶ 10-11.)  Despite this assignment, as of April

2013, BANA still serviced the loan, and so Abramson appealed to BANA for a loan modification or some other loss mitigation option. (Compl. ¶¶ 12- 13.)  BANA instructed him to submit a loan modification application (D.E. 1-1 "Loan Modification Application"), which he completed and sent back to BANA in either April or May of 2013.[1]  (Compl. ¶¶ 14-15.)  After the application was received, the servicing of the mortgage loan was transferred from BANA to Residential Credit Solutions, Inc. ("RCS"), effective on June 16, 2013.  (Compl. ¶ 17.)

Though the loan modification was never denied, BNY filed a foreclosure debt collection complaint in New Jersey state court, which Abramson answered on September 4, 2014.  (Compl. ¶¶ 17-19, 20; D.E. 1-2 ("State Foreclosure Complaint and Certifications").)  Around this time, Abramson claims that RCS started to make harassing phone calls.  He asserts that over a period of six months, on 18 separate dates from September, 2014 to February, 2015, he receive more than 60 calls during which RSC representatives threatened and insulted him, and despite his requests, refused to communicate with his attorney.  (Compl. ¶¶ 25-48.)  On July 21, 2015, Abramson filed the instant action, alleging a violation of RESPA.  As relevant to this motion, the first count is brought against BNY, RCS, and BANA.  Abramson asserts that although he submitted a complete loss mitigation application, BANA failed to promptly review or deny it. According to Abramson, this constitutes a violation of 12 U.S.C. § 2605, and he should be able to recover damages for the time spent putting together and communicating about that application. (The second count, which alleges a violation of the Fair Debt Collection Practices Act, is not brought against BANA and therefore not of concern on this motion.)

---

[1] The loan modification application reflects that Abramson signed it on May 15, 2013.  (Loan Modification Application at 15).  However, the shipping label reflects that the application was sent back to BANA on April 10, 2013, one day after it was received by Abramson.  (*Id.* at 3).  In its opposition brief, BANA states that Abramson submitted a request for modification assistance on or around May 15, 2013.  (D.E. 20 ("Opposition").)  Regardless, for the purposes of this motion to dismiss, Abramson has sufficiently pleaded that the loan modification application was completed at least 30 days before the servicing of the mortgage loan was transferred to RCS.

2

On September 23, 2015, BANA filed this motion to dismiss (D.E. 14).  Following a full briefing (D.E. 20, 21), the Court decides the motion on the papers.  *Fed. R. Civ. P.* 78(b).

### III.   LEGAL STANDARD:

In deciding a motion to dismiss under *Federal Rule of Civil Procedure* 12(b)(6), the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom.  *Phillips v. County of Alleghany*, 515 F.3d 224, 231 (3d Cir. 2008).  The factual assertions in the complaint must be viewed in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint should be dismissed if the plaintiff's allegations, taken as true, fail to state a claim upon which relief can be granted.  Iqbal, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  To survive a motion to dismiss, a plaintiff must "plead more than the possibility of relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  The Court will "disregard legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements."  *Santiago v. Warminster Twp.,* 629 F.2d 121, 128 (3d Cir. 2010); *see also Zebrowski v. Wells Fargo Bank, N.A.*, 657 F. Supp.2d 511, 515-16 (D.N.J. 2009) (Rodriquez, J.) (holding "the court accepts as true well-pleaded allegations in the complaint, but does not accept unsupported conclusory statements").

Generally, where "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment."  *Fed. R. Civ. Pro.* 12(d). However, the Court may rely on documents that are "integral to or explicitly relied upon in the complaint" without converting the motion to dismiss into a motion for summary judgment.  *See In re Burlington Coat Factory Sec. Litig.,* 1114 F.3d 1210, 1425-26 (3d Cir. 1997); *see also Moore v. Beers*, 2015 WL 4638239 at *3 (D.N.J.  Aug. 4, 2015) (Hillman, J.) (holding a "court

reviewing a *Rule* 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice" except where there is "an undisputed authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").  Here the Court considers the letter from BANA to Abramson discussing the transfer of his loan serving (D.E. 14-2, Ex. D.) as the parties have not disputed its authenticity, and it is integral to the timeline presented in the complaint. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.,* 1114 F.3d at 1425-26.

## IV.   LEGAL ANALYSIS

RESPA's subpart C controls mortgage servicing.  RESPA states that:

> "Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option, . . . [however,] if a servicer received a loss mitigation application more than 37 days before a foreclosure sale, then within 30 days of receiving a borrower's complete loss mitigation application, a service shall: (i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or the assignee of the mortgage."

12 C.F.R. § 1024.41 (a), (c).   This requirement aids in "ensuring that servicers respond to borrower requests and complaints in a timely manner and maintain and provide accurate information, helping borrowers avoid unwarranted or unnecessary costs and fees, and facilitating review for foreclosure avoidance options."  Amendments to the 2013 Mortgage Rules under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 79 FR 7476-01 at *74179; *see also Campbell v. Nationstar Mortg.*, 611 Fed. Appx. 288, 297 (6th Cir. 2015) (discussing the purpose and effective date of the newly codified loss mitigation regulations).

In its moving brief (D.E. 14 ("Motion to Dismiss")) and reply to the opposition (D.E. 21), BANA argues that it is free from any obligation under RESPA to review and provide written notice of which loss mitigation options are available, because it transferred the servicing of Abramson's mortgage loan to RCS within 30 days of the submission of the loan modification application.   (Motion to Dismiss at 4-5.)  BANA asserts that as a result of the transfer, it is exclusively the obligation of RCS to review and provide a written response.  (*Id.*)  In particular, BANA argues that it informed Abramson in writing about the transfer as follows:

> On June 16, 2013, the servicing of your above reference mortgage loan will transfer to Residential Credit Solutions, Inc. … If you are currently being considering for a loan modification or other foreclosure avoidance program, your new servicer Residential Credit Solutions, Inc. is aware of your current status and will have all documents.

(D.E. 14-2, Ex. D.)  And so BANA argues that Abramson has no cognizable RESPA claims against BANA for failing to act on the loan modification application.

However, looking only at the well-pleaded allegations of the complaint, as required by the now familiar *Iqbal/Twombly* pleading standard, Abramson has sufficiently pleaded that he submitted a complete loss mitigation application in the spring of 2013.  He also pleaded that more than 30 days passed without written notice of Abramson's loss mitigation options; these showings are all that 12 C.F.R. § 1024.41 (c) requires to present a violation of RESPA.  Both parties concede that if BANA transferred the entire loss mitigation application to RCS within the 30 day period that may be sufficient to dismiss the claim against BANA.  But at this stage in the litigation, there is a factual dispute over the timeline for the receipt and transfer of the application

While BANA argues that Abramson has not sufficiently pleaded damages, the Court finds otherwise.  Under RESPA, a violator may be liable to the borrower in "an amount equal to the sum of – (A) any actual damages to the borrower as a result of the failure; and (B) any

additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1).  Abramson specifically alleges that he suffered damages as a result of BANA's inaction with regard to the loss mitigation application, including "time spent putting together the loss mitigation application and time spent communicating with Defendants regarding the loss mitigation application."[2]  (Compl. ¶ 62.)

### V.        CONCLUSION

For the foregoing reasons, the Court finds that Abramson has presented facts sufficient to plead a claim for relief under RESPA against BANA.  Consequently, BANA's motion to dismiss the complaint under *Federal Rule of Civil Procedure* 12(b)(6) is denied.

/s/ Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.

---

[2] BANA cites *Mercado v. Bank of America, N.A.*, 2013 WL 2933217, at *6 (D.N.J. June 13, 2013) (Martini, J.) as an example of a case that dismissed a RESPA claim for failure to plead actual damages.  But in *Mercado* Judge Martini does not discuss the plaintiff's RESPA damages at all.  He dismisses the RESPA count because the two sections under which the plaintiff sued are not privately enforceable, *id.* at *4, and refers to the damages requirement only in relation to the plaintiff's state law claim under the New Jersey Consumer Fraud Act.  Further, Judge Martini denied the motion to dismiss, finding that the plaintiff sufficiently alleged an ascertainable loss.  *Id.* at *6.